**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| HEATHER JAMES, on behalf of herself and others similarly situated | : : : | |
| Plaintiff, | : : | Civil Action No. 1:25-cv-08590 |
| v. | : : | |
| THE CAMPBELL'S COMPANY, CAMPBELL SOUP SUPPLY COMPANY, LLC | : : : : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**<u>PLAINTIFF'S CLAIMS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)</u>**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.   Plaintiff's employment and CBA............................................................... 2

    B.   The CBA's overtime pay provisions .......................................................... 3

    C.   The CBA's donning and doffing provisions............................................... 3

    D.   The CBA's grievance and arbitration requirements ................................... 4

    E.   Plaintiff's FLSA Complaint ....................................................................... 6

III.    ARGUMENT ...................................................................................................... 8

    A.   This Court should dismiss Plaintiff's FLSA claims because her claims require interpretation of the CBA and are therefore subject to the CBA's dispute resolution process. .. 9

        1.   Plaintiff's claims require interpretation of the CBA's provisions entitling hourly employees to overtime for hours under 40 in a workweek. ....................................................11

        2.   Plaintiff's claims require interpretation of the CBA's provisions relating to donning and doffing................................................................................................................. 13

    B.   This Court should dismiss Plaintiff's FLSA claims against Campbell's because she fails to allege that Campbell's was her employer or the employer of any potential opt-in plaintiff. 15

    C.   This Court should dismiss the collective action allegations from Plaintiff's FLSA Complaint because she fails to sufficiently allege who comprises the group she seeks to represent. ................................................................................................................... 20

IV.    CONCLUSION................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................9

*Attanasio v. Cmty. Health Sys.*, 863 F. Supp. 2d 417 (M.D. Pa. 2012) ............................. 16, 19-20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................9, 21

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)...............................9

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)...................................................9

*Clayton v. Int'l Union Auto. Workers*, 451 U.S. 679 (1981) .......................................10

*Creech v. Holiday CVS, LLC*, Civ. A. No. 11-46, 2012 WL 4483384 (M.D. La. Sep. 28, 2012) ............................................................................................... 2, 21-22

*Dickerson v. Bank of America, N.A.*, Civ. No. 12-03922, 2013 WL 1163483 (D.N.J. Mar. 19, 2013) .................................................................................................9

*Dyer v. Lara's Trucks*, Civ. A. File No. 1:12-CV-1785, 2013 WL 609307 (N.D. Ga. Feb. 19, 2013) ...............................................................................................20

*Elec. Workers v. Hechler*, 481 U.S. 851 (1987) ......................................................9

*Elmer v. Kohli*, Case No. 22-cv-02303, 2025 WL 99595 (D.N.J. Jan. 14, 2025) .........................17

*Elswick v. Daniels Elec. Inc.*, 787 F. Supp. 2d 443 (S.D. W. Va. 2011) ......................................11

*Enterprise Rent-A-Car Wage & Hour Employment Pracs. Litig.*, 683 F.3d 462 (3d Cir. 2012) .................................................................................................16

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)............................................9

*Freeman v. River Manor Corp.*, 17 CV 05162, 2019 WL 1177717 (E.D.N.Y. Mar. 13, 2019) .............................................................................................. 11-12

*Green v. 712 Broadway, LLC*, Civ. A. No. 17-991, 2018 WL 2754075 (D.N.J. June 8, 2018) .................................................................................................16

*Hershey v. Pa. Dep't of Transp.*, No. 1:21-CV-0506, 2023 WL 6442074 (M.D. Pa. Sept. 29, 2023) .................................................................................................11

*Hodczak v. Latrobe Specialty Steel Co.*, Civ. A. No. 08-649, 2009 WL 911311 (W.D. Pa. Mar. 31, 2009)................................................................................ 2, 21-22, 24

Page

*Hoops v. Keyspan Energy*, 794 F. Supp. 2d 371 (E.D.N.Y. 2011) ............................................ 9-10

*Hughes v. United Parcel Serv.*, 639 F. App'x 99 (3d Cir. 2016) .................................................... 11

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ............................................ 9

*Lafferty v. Sherwin-Williams Co.*, Civ. No. 1:17-06321, 2018 WL 3993448 (D.N.J. Aug. 21, 2018) .................................................................................................................... 21

*Montgomery v. Laborers Dist. Council of Phila. & Vicinity*, No. CIV.A. 15-02815, 2015 WL 4522917 (E.D. Pa. July 27, 2015) .................................................................................. 11

*Orlando v. Interstate Container Corp.*, 100 F.3d 296 (3d Cir. 1996) .......................................... 10

*Patton v. Stolle Machinery Co., LLC*, Civ. A. No. 14-cv-3392, 2015 WL 5013668 (D. Colo. Aug. 25, 2015) ....................................................................................................... *Passim*

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ........... 8

*Sandifer v. United States Steel Corp.*, 571 U.S. 220 (2014) ........................................................ 13

*St. Croix v. Genentech, Inc.*, No. 8:12-cv-891, 2012 WL 2376668 (M.D. Fla. June 22, 2012) ............................................................................................................................... 21

*Thompson v. Real Estate Mortgage Network*, 748 F.3d 142 (3d Cir. 2014) ................................ 18

*Townsend v. BC Natural Chicken LLC*, Civ. A. No. 06-4317, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007) ..................................................................................................................... *Passim*

*Vadino v. A. Valey Eng'rs*, 903 F.2d 253 (3d Cir. 1990) .................................................... 1, 10, 14

*Williams v. Bob Evans Rests., LLC*, 2:18-cv-01353, 2020 WL 4692504 (W.D. Pa. Aug. 13, 2020) ............................................................................................................................ *Passim*

*Wilson v. Bernstock*, 195 F. Supp. 2d 619 (D.N.J. 2002) ........................................................... 8

**Federal Statutes**

29 U.S.C. § 203(o) .............................................................................................................. 13-15

29 U.S.C. § 207(a)(1) ........................................................................................................... 2, 15

29 U.S.C. § 216(b) ................................................................................................................. 2, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................. 1, 10

Page

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 1, 9-10

## I.    INTRODUCTION

Plaintiff Heather James ("Plaintiff") brings this lawsuit against Defendants The Campbell's Company ("Campbell's") and Campbell Soup Supply Company, LLC ("Campbell Soup Supply"), seeking on behalf of herself and all "production/manufacturing" employees "unpaid overtime and other compensation" under the Fair Labor Standards Act ("FLSA"), which she claims stems from unpaid time spent donning and doffing uniforms and personal protective equipment ("PPE") and unpaid time due to alleged rounding practices. Certification of Natalie F. Bare ("Bare Cert."), Exhibit A, at ¶¶ 25-28. But Plaintiff neglects to mention that her employment was subject to a Collective Bargaining Agreement ("CBA") that prescribed grievance and arbitration procedures for disputes concerning the settlement of differences dependent on interpretation of the CBA. *See* Certification of John Wollenweber ("Wollenweber Cert.") ¶¶ 3-5.

Because Plaintiff's CBA addresses her entitlement to overtime wages for hours worked under 40 in a workweek and involves agreements, customs and practices related to donning and doffing under the CBA, her FLSA claims require interpretation of the contract, and the Labor Management Relations Act ("LMRA") required her to follow the CBA's grievance and arbitration procedures before bringing suit in federal court. *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990). And she did not. Wollenweber Cert. ¶ 17. Nor does her Complaint plead that she did. As a result, the Court should dismiss Plaintiff's claims under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim. *Patton v. Stolle Machinery Co., LLC*, Civ. A. No. 14-cv-3392, 2015 WL 5013668, at *4 (D. Colo. Aug. 25, 2015); *Townsend v. BC Natural Chicken LLC*, Civ. A. No. 06-4317, 2007 WL 442386, at *3-4 (E.D. Pa. Feb. 2, 2007).

Even if Plaintiff's claims did not require her to follow the grievance and arbitration procedures of her CBA before bringing this lawsuit (which they did), Plaintiff's Complaint still

fails to state a claim against The Campbell's Company and fails to adequately plead claims on behalf of a representative group of employees. The FLSA requires *employers* to pay their *employees* overtime for hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). And it allows a plaintiff to maintain a collective action on behalf of herself and other employees who are similarly situated. *See* 29 U.S.C. § 216(b).

To state a claim for unpaid overtime compensation under the FLSA, a plaintiff must plead facts that each defendant was her employer. *Williams v. Bob Evans Rests., LLC*, 2:18-cv-01353, 2020 WL 4692504, at *5-6 (W.D. Pa. Aug. 13, 2020). And to maintain her claim on behalf of other employees, she must plead facts sufficient to establish what group of employees she believes is similarly situated. *Hodczak v. Latrobe Specialty Steel Co.*, Civ. A. No. 08-649, 2009 WL 911311, at *9-10 (W.D. Pa. Mar. 31, 2009); *Creech v. Holiday CVS, LLC*, Civ. A. No. 11-46, 2012 WL 4483384, at *3 (M.D. La. Sep. 28, 2012).

Here, Plaintiff fails to adequately plead that Campbell's was her "employer." Moreover, she does not plead sufficient facts regarding who constitutes the group of "production/manufacturing" employees that she seeks to represent in this litigation, making it impractical for Defendants to respond to her Complaint. So even if the LMRA does not preclude her FLSA claims, Plaintiff's claims against The Campbell's Company and her claims on behalf of "production/manufacturing" employees fail to meet federal pleading standards.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's employment and CBA

From June 9, 2022, until her employment ended in May 2024, Plaintiff worked for Campbell Soup Supply as an hourly employee at its facility in Napoleon, Ohio, in packaging and filler operator roles. Wollenweber Cert. ¶ 4. During this period, the terms and conditions of Plaintiff's employment were governed by a CBA entitled "Collective Bargaining Agreement

Between Campbell Soup Supply Company and United Food and Commercial Workers Union Local 75" (the "2022-2025 CBA"). *See* Wollenweber Cert. ¶ 3 & Ex. A.

Through the 2022-2025 CBA (and its predecessor collective bargaining agreements), Campbell Soup Supply recognized the United Food and Commercial Workers Union Local 75 (the "Union") as "the exclusive bargaining agent for all of its hourly employees" at the Napoleon, Ohio facility. Wollenweber Cert. ¶ 6 & Ex. A, at Art. 1.1.

### B.  The CBA's overtime pay provisions

The 2022-2025 CBA contained various provisions addressing wages, hours of work, and overtime, including the extent to which hourly employees may be entitled to overtime pay for any hours of work under 40 in a workweek. Wollenweber Cert. ¶ 7 & Ex. A, at Art. 3. For instance, the 2022-2025 CBA provides, among other things:[1]

- "Time and one-half will be paid for … eight (8) hours in a day" for hourly employees hired before certain dates. Wollenweber Cert., Ex. A, at Art. 3.2a.

- "Time and one-half will be paid an employee for work performed on Saturday and Sunday" for hourly employees hired before certain dates. Wollenweber Cert., Ex. A, at Art. 3.2b.

- "Double time will be paid for the work performed on the seventh day worked in the scheduled work week" for all hourly employees. Wollenweber Cert., Ex. A, at Art. 3.2b.

- "All paid days will count as time worked for the purpose of overtime calculation" for all hourly employees. Wollenweber Cert., Ex. A, at Art. 3.2b.

### C.  The CBA's donning and doffing provisions

The 2022-2025 CBA also reflects that the Union and Campbell Soup Supply had negotiated the extent to which time spent by hourly employees donning and doffing at the beginning or end

---

[1] The CBA contains other provisions relevant to overtime. *See e.g.*, Wollenweber Cert., Ex. A, at Art. 3.2c-d (addressing hours worked when computing overtime pay); Art. 3.7 (explaining that overtime pay will not be "pyramided").

of each workday would be included or excluded from their measured working time. Wollenweber Cert. ¶ 8. The outcome of these negotiations is reflected in the "Memorandum of Understanding – Donning & Doffing" (which is part of the CBA). Wollenweber Cert. ¶ 8 & Ex. A, at p. 29. This Memorandum of Understanding has been included in prior versions of the CBA between Campbell Soup Supply and the Union since at least 2006, and it is included in the version of the CBA currently in effect since March 17, 2025. Wollenweber Cert. ¶ 8.

As set forth in the "Memorandum of Understanding – Donning & Doffing" of the 2022-2025 CBA, the Union and Campbell Soup Supply negotiated that Campbell Soup Supply would "provide the time necessary, within their shift, for the Electricians to don and doff the required personal protective equipment." Wollenweber Cert. ¶ 9 & Ex. A, at p. 29. Since at least 2006 through the end of Plaintiff's employment, agreements as well as customs and practices existed under the CBA for the positions at the Napoleon, Ohio facility as to whether and the extent to which time spent in changing clothes or washing at the beginning or end of each workday was excluded from measured working time. Wollenweber Cert. ¶ 9.

### D. The CBA's grievance and arbitration requirements

Article 6 of the 2022-2025 CBA provides a detailed grievance procedure for the settlement of any differences between Campbell Soup Supply and bargaining unit employees. *See* Wollenweber Cert. ¶ 10 & Ex. A, at Art. 6.

First, the CBA requires employees to discuss their complaints informally with the Union Steward and their Supervisor or Shift Manager before pursuing a formal grievance. Wollenweber Cert. ¶ 11 & Ex. A, at Art. 6.2. If this informal discussion does not result in satisfactory settlement of the grievance, the complaint may be reduced to writing and become a formal grievance. *Id.* To initiate a formal grievance, an employee has ten (10) working days to reduce their complaint to

writing and submit it to the Human Resources Department. Wollenweber Cert. ¶ 12 & Ex. A, at Art. 6.2. The formal grievance procedure is comprised of three steps. *Id.*

The first step is a meeting between the affected employee, accompanied by the Chief Union Steward and the Human Resources Manager. Wollenweber Cert. ¶ 13 & Ex. A, at Art. 6.2. The Human Resources Manager conducts the meeting and provides a decision regarding the grievance. *Id.* The Chief Steward may accept the Human Resource Manager's decision, subject to the grievant's right to appeal. If the Chief Steward does not accept the decision, to proceed to the second step, the grievance must be submitted to the Human Resources Director within 10 working days of the Human Resource Manager's decision. *Id.* If the Human Resources Manager does not provide a decision within ten (10) working days, the grievance may be submitted to the second step. Wollenweber Cert. ¶ 14 & Ex. A, at Art. 6.2.

The second step of the formal grievance process is a meeting between the affected employee, President of the Union or his/her representatives (Union Representative), Chief Steward, and the Plant Manager or his/her representatives (Human Resources Director). Wollenweber Cert. ¶ 15 & Ex. A, at Art. 6.2. The Human Resources Director must render the decision regarding the grievance within 15 working days. *Id.* The Chief Steward may accept the decision, subject to the grievant's right to appeal. *Id.*

Under step 3, the Union or Campbell Soup Supply may demand that the grievance be arbitrated within 25 working days of the Human Resource Director's step 2 decision. Wollenweber Cert. ¶ 16 & Ex. A, at Art. 6.2. The CBA provides that the arbitrator shall be selected in accordance with the procedures of the Federal Mediation Conciliation Service, and the arbitrator's decision shall be final and binding on the parties. *Id.*

During her employment, Plaintiff did not submit any complaint to the Human Resources Department regarding the allegations set forth in her Complaint that she was not paid for all work time. Wollenweber Cert. ¶ 17. Nor was any formal grievance or arbitration demand submitted by her or on her behalf regarding these allegations. *Id.*

### E.  Plaintiff's FLSA Complaint

On June 9, 2025, Plaintiff filed her Complaint, alleging that Campbell's and Campbell Soup Supply violated the statutory requirements of the FLSA by, *inter alia*, failing to compensate her and "other similarly situated production/manufacturing employees" for time spent donning their uniforms and PPE and engaging in "other pre-shift substantive work activities, such as washing their hands, reviewing their assignment, and checking daily shift information." Bare Cert., Ex. A, at ¶¶ 25-32. She also alleges that Campbell's and Campbell Soup Supply "maintained an unlawful policy or practice of rounding its production/manufacturing employees' hours worked down in Campbell's favor or otherwise reducing employees' total hours worked." Bare Cert., Ex. A, at ¶ 25. Based on these allegations, Plaintiff seeks "unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of herself and the Potential FLSA Collective Members." Bare Cert., Ex. A, at ¶ 45.

Campbell Soup Supply is an indirect, wholly owned subsidiary company of Campbell's. *See* Bare Cert., Ex. B. Plaintiff's Complaint does not distinguish between Campbell's and Campbell Soup Supply; instead, the Complaint refers to them collectively as "Defendants" or "Campbell" and makes identical assertions for both entities. Bare Cert., Ex. A, at ¶¶ 7-9. Specifically, Plaintiff's Complaint alleges that:

- "Defendants have been an 'employer' or 'joint employer' as the FLSA defines those terms due to their employment of Named Plaintiff and those similarly situated as described herein." Bare Cert., Ex. A, at ¶ 10.

- "Defendants form a 'single employer' because they are part of a single integrated enterprise and/or a joint employer by jointly operating and providing services and maintaining interrelated operations, centralized control of labor relations, common management and common ownership, and financial control." Bare Cert., Ex. A, at ¶ 11.

- "Defendants have determined those matters governing the essential terms and conditions of employment for [herself] and similarly situated employees. In so doing, Defendants are responsible for the human resources decision-making processes, including material terms and conditions of employment and other human resource operations, for Named Plaintiff and those similarly situated." Bare Cert., Ex. A, at ¶ 12.

- "Defendants [have] or had direct or indirect control over Named Plaintiff's and other similarly situated employees' working conditions, including matters governing the essential terms and conditions of their employment. . . . Defendants have exercised that authority and control over Named Plaintiff and other similarly situated employees." Bare Cert., Ex. A, at ¶ 14.

- "Defendants have had the authority to hire and fire employees, supervise and control employees' work schedules and work conditions, determine the rate and method of pay, and/or maintain employee records." Bare Cert., Ex. A, at ¶ 15.

- "Defendants maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including promulgating and enforcing policies affecting wages and overtime." Bare Cert., Ex. A, at ¶ 17.

Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) as a representative action "on behalf of herself and all other similarly situated production/manufacturing employees of the opt-in collective." Bare Cert., Ex. A, at ¶ 33. She asserts that these "similarly situated production/manufacturing employees are known to Defendant and readily identifiable through Campbell's records." Bare Cert., Ex. A, at ¶ 35. But the Complaint does not identify or describe the records to which she refers. Instead, it contains a footnote with a link to job postings. *See* Bare Cert., Ex. A, at ¶ 9 n.1. The linked page is a dynamic web page on which members of the public

can search for job openings at facilities owned by Campbell's and various subsidiaries all over the country. *See* Bare Cert. ¶ 5.[2]

This website allows visitors to filter positions by "Category," but there is no category called "production/manufacturing." *See* Bare Cert., Exs. E-F. The categories include, among others, "Hourly Manufacturing," "Human Resources," "Information Technology," "Marketing," "R&D," and "Sales." *See* Bare Cert., Exs. C-D.

The positions available on this website range from a Packer in Hanover, Pennsylvania, to an Executive Administrative Assistant and a Human Resources Manager in Camden, New Jersey, to a Human Resources Generalist in Denver, Pennsylvania. *See* Bare Cert., Exs. F-H. This website also lists positions specific to Campbell's support to and service of its customers, including for example, Amazon and Walmart, by listing the positions of Customer Sales Leads in Philadelphia, Pennsylvania and Seattle, Washington, and a Senior Category Advisor in Rogers, Arkansas. *See* Bare Cert., Ex. I.

## III.    ARGUMENT

The Court should dismiss Plaintiff's Complaint pursuant to 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to 12(b)(6) for failure to state a claim. The standard for reviewing a 12(b)(1) motion to dismiss "is essentially identical to the 12(b)(6)

---

[2] Documents which are "integral to or explicitly relied upon in the complaint" may properly be considered on a motion to dismiss "without converting the motion to dismiss into one for summary judgment." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 623 (D.N.J. 2002) (citation omitted). When a complaint relies on a document, the plaintiff "obviously is on notice of the contents of the document, and the need for a chance to refute the evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). When a complaint contains excerpts from press releases, public announcements, or publicly filed documents, a court may refer to the full text of those public statements in ruling on a motion to dismiss. *See Wilson*, 195 F. Supp. 2d at 623. Because Plaintiff included the link to the web page in her Complaint, she "obviously is on notice of the contents" of the web page. And because it is a public web page, this Court may refer to the full contents of this web page in ruling on Defendants' Motion to Dismiss.

standard, except that '[a] plaintiff asserting subject matter jurisdiction has the burden of proving

by a preponderance of the evidence that it exists.'" *Hoops v. Keyspan Energy*, 794 F. Supp. 2d 371,

376-77 (E.D.N.Y. 2011); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d

Cir. 1991).

A motion to dismiss under Rule 12(b)(6) must be granted if a complaint fails to allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007). Facial plausibility requires allegations showing "more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While a court must accept all of a complaint's well-pleaded facts as true, it need not credit either

"bald assertions" or "legal conclusions" when deciding a motion to dismiss. *In re Burlington Coat

Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). A "plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Fowler v.

UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

When a motion under Rule 12 is based on more than one ground, the court should consider

the 12(b)(1) challenge first. *Dickerson v. Bank of America, N.A.*, Civ. No. 12-03922, 2013 WL

1163483, at *1 (D.N.J. Mar. 19, 2013) (citation omitted).

**A. This Court should dismiss Plaintiff's FLSA claims because her claims require interpretation of the CBA and are therefore subject to the CBA's dispute resolution process.**

Section 301 of the LMRA "governs claims founded directly on rights created by collective-

bargaining agreements, and also claims 'substantially dependent on analysis of a collective-

bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Elec.

Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). Before bringing an action involving claims

governed by Section 301, an employee "must attempt to exhaust any grievance and arbitration

procedures established by a collective bargaining agreement." *Orlando v. Interstate Container Corp.*, 100 F.3d 296, 299 (3d Cir. 1996) (citing *Clayton v. Int'l Union Auto. Workers*, 451 U.S. 679, 681 (1981)).

Thus, where a plaintiff's FLSA claims depend on an analysis of her CBA, then under section 301 of LMRA, the plaintiff must resolve her claims pursuant to the grievance and arbitration procedures of her CBA. Indeed, the Third Circuit has expressly held that FLSA "claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301 [of the LMRA]." *Vadino*, 903 F.2d at 266. In other words, "if an FLSA claim depends on the disputed interpretation of a provision in the applicable collective bargaining agreement, 'an employee must first go to arbitration—through the representative union—before vindicating his or her rights in federal court under the FLSA.'" *Patton*, 2015 WL 5013668, at *3 (internal citations omitted).

Where a plaintiff bringing a CBA-dependent FLSA claim in federal court fails to establish that she followed the grievance and arbitration procedures of her CBA prior to bringing the lawsuit, the court may dismiss the plaintiff's claims under Rule 12(b)(1) for lack of subject matter jurisdiction. *See, e.g., id.* at *4 (granting the defendant's motion to dismiss under Rule 12(b)(6) for lack of subject matter jurisdiction because the plaintiff's FLSA claim rested on an interpretation of the CBA).

Alternatively, courts routinely dismiss such CBA-dependent FLSA claims pursuant to Rule 12(b)(6) for failure to state a claim. *See, e.g., Townsend*, 2007 WL 442386, at *3-4 (granting motion to dismiss FLSA claim because it required interpretation of the CBA, and plaintiffs did not follow CBA's grievance procedures); *Hoops*, 794 F. Supp. 2d at 378-79 (granting motion to dismiss FLSA

10

claims as preempted by the LMRA because the claims would require the court to interpret the CBA, and it was undisputed that the plaintiff did not exhaust any of the grievance procedures outlined in the CBA prior to filing the lawsuit); *Elswick v. Daniels Elec. Inc.*, 787 F. Supp. 2d 443, 449-51 (S.D. W. Va. 2011) (dismissing FLSA claim as premature because the claim rested on an interpretation of the underlying CBA, and plaintiff failed to exhaust remedies set forth in the CBA).

Here, Plaintiff's FLSA claims necessarily depend on interpretations of multiple provisions of the CBA that governed her employment. As a result, she must pursue her claims in accordance with the grievance and arbitration procedures outlined in the 2022-2025 CBA.[3]

> **1. Plaintiff's claims require interpretation of the CBA's provisions entitling hourly employees to overtime for hours under 40 in a workweek.**

An employee's FLSA claim necessarily requires an interpretation of the CBA where the CBA provides a contractual right to overtime wages for hours under 40 in a workweek. *See Freeman v. River Manor Corp.*, 17 CV 05162, 2019 WL 1177717, at *5 (E.D.N.Y. Mar. 13, 2019). This is because, as the *Freeman* court explained, an employee's statutory claim for overtime pay for hours *over* 40 in a workweek cannot be adjudicated without first resolving the threshold question of the employee's contractual right to overtime for hours *under* 40 in a workweek.

In *Freeman*, the plaintiff's employment was subject to a CBA that provided a contractual right to overtime for hours worked between 35 and 40 per week. *Id.* The plaintiff brought a claim

---

[3] Plaintiff did not attach the CBA to her Complaint. However, this Court may consider CBAs on a motion to dismiss without converting the motion to dismiss into one for summary judgment because they are integral to the parties' relationship and "undisputedly authentic documents upon which [Plaintiff's] claims are based." *See Hershey v. Pa. Dep't of Transp.*, No. 1:21-CV-0506, 2023 WL 6442074, at *1 n.2 (M.D. Pa. Sept. 29, 2023); *Montgomery v. Laborers Dist. Council of Phila. & Vicinity*, No. CIV.A. 15-02815, 2015 WL 4522917, at *1 n.4 (E.D. Pa. July 27, 2015). Indeed, failure to consider these documents could "raise the countervailing concern that a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which [the claim] relied." *Hughes v. United Parcel Serv.*, 639 F. App'x 99, 103 (3d Cir. 2016) (quotation and citation omitted).

for unpaid overtime wages in federal court under the FLSA, and the defendant sought dismissal of the claim on the grounds that section 301 of LMRA precluded the claim because the plaintiff had failed to exhaust the grievance procedures of his CBA prior to bringing the lawsuit. *Id.*

The court granted the defendant's motion, dismissing the plaintiff's FLSA claim as "premature." *Id.* In doing so, the court explained that the FLSA applies only to overtime work exceeding 40 hours per week, whereas the plaintiff's CBA provided a contractual right to overtime for hours worked between 35 and 40 hours per week. *Id.* Thus, before the plaintiff would be eligible to receive overtime under the FLSA, a trier of fact would be required to assess the plaintiff's entitlement to pay for hours worked between 35 and 40 hours per week, "an undertaking that is wholly dependent on an interpretation of the CBA's terms of employment and thus effectively off limits to the Court in light of Section 301 [of the LMRA]." *Id.*

Here, resolving Plaintiff's FLSA claims requires adjudication of her right to overtime for hours under 40 in a workweek. This is because the 2022-2025 CBA addresses, among other issues related to overtime pay, the extent to which hourly employees are entitled to daily overtime, overtime for weekend work, double time for 7 consecutive days of work, and overtime stemming from the inclusion of paid time off as time worked. Wollenweber Cert., Ex. A, at Art. 3.1-3.2b.

And like the contract terms in *Freeman*, these types of provisions present a threshold question of whether Plaintiff is entitled to overtime wages for working less than 40 hours in a week, which must be resolved before Plaintiff may pursue her FLSA claims for hours over 40 in a workweek. Moreover, Plaintiff's Complaint expressly seeks "unpaid overtime *and other compensation*," along with "*all other remedies available* on behalf of herself and the Potential FLSA Collective Members." Bare Cert., Ex. A, at ¶ 45 (emphasis added). Because the threshold question of Plaintiff's entitlement to "other compensation" and "all other remedies" is wholly

dependent on an interpretation of the CBA, it must be resolved pursuant to the grievance and arbitration procedures outlined in the CBA.

### 2. Plaintiff's claims require interpretation of the CBA's provisions relating to donning and doffing.

Courts have also held that FLSA claims for time spent donning and doffing require interpretation of the CBA and are therefore subject to LMRA when the CBA addresses the subject of compensation for time spent changing clothes, either by its express terms or by the custom or practice under the CBA. *See Townsend*, 2007 WL 442386, at *4; *Patton*, 2015 WL 5013668, at *3-4. This is because "the [FLSA] statute provides that the compensability of time spent changing clothes . . . is a subject appropriately committed to collective bargaining." *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 226 (2014). Indeed, section 203(o) of the FLSA expressly provides that "[i]n determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o).

The court's decision in *Townsend* is instructive. There, the plaintiffs were subject to a CBA which addressed the issue of compensation for time spent donning and doffing, stating that employees would be paid "twelve (12) minutes pay per week to provide for wash up time." *Townsend*, 2007 WL 442386, at *4. The CBA also contained a provision for the parties to resolve grievances through arbitration. *Id.* at *3. The plaintiffs claimed that their employer violated the FLSA by failing to pay them overtime wages stemming from time they spent donning and doffing. *Id.* at *1. Instead of following the grievance and arbitration procedures of their CBA, the plaintiffs filed their claim as a representative action in federal court. *Id.* at *1.

The defendants filed a motion to dismiss the action for failure to state a claim, arguing that the plaintiffs failed to pursue arbitration in accordance with the CBA. *Id.* at *2. The court granted the defendant's motion to dismiss, explaining that section 203(o) of the FLSA allows parties to use the terms of a CBA to exclude "time spent in changing clothes or washing" from working hours. *Id.* at *4. Therefore, as the court explained, resolving the plaintiffs' FLSA claim in *Townsend* would require the court to interpret the CBA provision that employees would be paid 12 minutes per week for wash up time, and the intent of the parties in formulating that provision. *Id.* Such interpretations must be made under the LMRA, and the plaintiffs did not make any allegations pursuant to the LMRA. *Id.* at *3 (citing *Vadino*, 903 F.2d at 266). Accordingly, the court dismissed the plaintiffs' FLSA claim. *Id.* at *4.

Even where there is no express provision related to donning and doffing, adjudication of donning and doffing claims under the FLSA may still require interpretation of the related customs and practices that pertain to donning and doffing under the CBA. *See Patton*, 2015 WL 5013668, at *3-4. In *Patton*, the plaintiff's employment was subject to a CBA that addressed work hours, overtime, payroll practices, grievance procedures, and changing of clothing. *Id.* at *1. The plaintiff claimed that he spent roughly 40 minutes per day donning and doffing safety attire, which was "off the clock" and not compensated by the defendant. *Id.* Instead of using the CBA's grievance process, he filed a claim in federal court under the FLSA. *Id.*

The defendants filed a motion to dismiss, arguing that the court lacked subject matter jurisdiction to resolve the plaintiff's FLSA claim unless and until the CBA was interpreted pursuant to the grievance process under the LMRA. *Id.* The court granted the motion to dismiss, explaining that even though the CBA did not expressly address donning and doffing, section 203(o) of the FLSA allows the parties to exclude changing time from working hours by custom or practice under

a CBA. *Id.* at *3. Even though the plaintiff alleged that he was required to don and doff safety attire "off the clock," the defendant responded that long-standing customs, practices, and policies under the CBA allowed employees to wear safety attire from home or don and doff the safety attire at work "on the clock." *Id.* at *3-4. As a result, the court concluded that the plaintiff's FLSA claim was "substantially intertwined" with a CBA contract interpretation issue, which needed to be resolved under the LMRA before the plaintiff could be permitted to pursue a FLSA claim in federal court. *Id.* at 4.

Similarly, resolving Plaintiff's FLSA claims related to donning and doffing first requires resolution of whether any such time is excludable from hours worked under section 203(o) of the FLSA. Like the CBA in *Townsend*, the CBA governing Plaintiff's employment contains a "Memorandum of Understanding" regarding donning and doffing, which expressly states that Campbell Soup Supply "agrees to provide the time necessary, within their shift, for the Electricians to don and doff the required personal protective equipment." Wollenweber Cert., Ex. A, at p. 29. The fact that the CBA contains this Memorandum of Understanding indicates that the parties—as permitted by Section 203(o) of the FLSA—had negotiated the extent to which time spent by hourly employees donning and doffing at the beginning or end of each workday would be included or excluded from their measured working time. As in *Townsend* and *Patton*, adjudicating Plaintiff's FLSA claim would require this Court to interpret the Memorandum of Understanding and the related customs and practices under the CBA.

**B.  This Court should dismiss Plaintiff's FLSA claims against Campbell's because she fails to allege that Campbell's was her employer or the employer of any potential opt-in plaintiff.**

To state a claim under the FLSA, a plaintiff must plead facts sufficient to establish that each defendant was her employer. *See* 29 U.S.C. § 207(a)(1) ("[N]o *employer* shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified . . . .") (emphasis added); *Green v. 712 Broadway, LLC*, Civ. A. No. 17-991, 2018 WL 2754075, at *4 (D.N.J. June 8, 2018) (explaining that a plaintiff asserting FLSA claims must sufficiently allege "an actionable employer-employee relationship").

A parent company is generally *not* the employer of its subsidiary's employees. *Attanasio v. Cmty. Health Sys.*, 863 F. Supp. 2d 417, 422 (M.D. Pa. 2012) (quotations and citations omitted) ("[T]he doctrine of limited liability creates a strong presumption that a parent company is *not* the employer of its subsidiary's employees.") (emphasis added). Liability under the FLSA attaches to a parent corporation for the acts of its subsidiary "when the parent substantially controls the terms and conditions of employment at its subsidiary on a regular basis." *Id.* (citation omitted). Indeed, there must be "evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary" for a parent corporation to be considered an employer for FLSA purposes. *Id.* (citation omitted).

In cases where the plaintiff is claiming that both the subsidiary that employs her directly and its parent company are her employers, the plaintiff must plead sufficient facts regarding the parent company's status as a joint employer or a single integrated enterprise.

Pleading that a parent company is a joint employer with the subsidiary that directly employs the plaintiff involves pleading sufficient facts regarding the parent's company's (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like. *Williams*, 2020 WL 4692504, at *4 (citing *In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 469 (3d Cir. 2012)).

Similarly, pleading that a parent company and its subsidiary are a single integrated enterprise involves pleading sufficient facts regarding the companies' (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Elmer v. Kohli*, Case No. 22-cv-02303, 2025 WL 99595, at *6 (D.N.J. Jan. 14, 2025) (quotation and citation omitted).

Regardless of whether the plaintiff pursues a joint employer or single integrated enterprise theory, to avoid dismissal of the parent company, the plaintiff must allege sufficient facts *about each entity's* individual operations and involvement with the plaintiff and putative collective action members. *See Williams*, 2020 WL 4692504, at *5. It is not enough for a plaintiff to simply allege that the entities cumulatively are responsible for labor policies, have the power to hire and fire employees, control various conditions of employment, maintain records, share common management, share common employees, and share common human resources and payroll services. *See id.* at *6. These allegations, which simply recite the factors of the joint employer and single integrated enterprise tests, are "bare legal conclusions not entitled to credit at the motion to dismiss stage." *Id.* at *5 (citation omitted).

The court's decision in *Williams* is instructive. There, the plaintiffs brought a complaint asserting various wage-and-hour claims, including under the FLSA, and naming as defendants both a parent corporation and its wholly owned subsidiary company. *See Williams*, 2020 WL 4692504, at *1-2. The complaint alleged that, "Defendants are/were a single and joint employer with a high degree of interrelated and unified operations, sharing common management between restaurant locations, sharing common employees between locations, as well as sharing common human resources and payroll services." *Id.* at *5. The parent corporation filed a motion to dismiss,

arguing that the complaint did not plead sufficient facts regarding the parent corporation's employer status. *Id.* at \*2.

The *Williams* court granted the plaintiffs' motion, concluding that the plaintiffs had failed to plead that the parent corporation was any form of employer under the FLSA. *Id.* at \*3. In doing so, the court emphasized that the complaint's allegations spoke of the defendants collectively, rather than alleging any specific facts about the parent corporation which would permit the court to determine its liability in any form. *Id.* at \*4. According to the court, this "insistence on referring to the Defendants collectively and failing to plead individual facts as to each Defendant is *fatal* to the validity of the claim that [the parent corporation] was [the plaintiffs'] single or joint employer." *Id.* at \*5 (emphasis added). The court explained that "by . . . lumping all Defendants into one, the sufficiency of the allegations relative to economic realities and other key factors cannot be assessed within and from the allegations as written." *Id.* at \*7. As a result, the court dismissed the complaint as to the parent corporation. *Id.*

The *Williams* court provided a helpful contrast with *Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 148-49 (3d Cir. 2014), in which the Third Circuit held that a plaintiff had sufficiently pled that two corporate defendants were liable under the FLSA under both primary and joint employer liability. *Williams*, 2020 WL 4692504, at \*5. The key difference was that the complaint in *Thompson* differentiated between the defendants, providing "at least some detail" about the plaintiff's individual interactions with each defendant. *See id.* at \*6 ("For instance, the [*Thompson*] complaint stated that an employee of one defendant conducted the plaintiff's training after she was hired by the other defendant"). By contrast, the complaint in *Williams* proceeded in an "all of the above" fashion without any basic differentiation between the defendants. *Id.*

The court's decision in *Attanasio* also emphasizes that an employee of a subsidiary cannot maintain a complaint against the parent company without any details regarding the parent company's involvement with the subsidiary's employees. *See Attanasio*, 863 F. Supp. 2d at 425-26. There, the plaintiffs brought a complaint under the FLSA against a parent corporation and its two subsidiaries, alleging that the parent corporation was the employer of the plaintiffs because it had the authority to "hire and fire" plaintiffs, "control the work performed," "direct the manner" in which work was performed, "inspect and supervise the work," "promulgate policies and procedures" related to work, time, pay, overtime, and appearance, and "determine the pay" given to plaintiffs. *Id.* at 425. The defendants filed a motion to dismiss, arguing that the plaintiffs had not sufficiently pled that the parent corporation was their employer under the FLSA. *Id.* at 420.

The court dismissed the parent corporation from the action, explaining that the complaint contained "no operative details suggesting exactly *how* [the parent corporation] exercised authority over the particular employees" and "*how* these employees were supervised by" the parent corporation. *Id.* at 425 (emphasis in original). Because they provided "no supporting details as to the mechanics of [the parent corporation's] actual involvement," the court found that "Plaintiffs have presented a list of relevant factors without providing any detail to support that these factors actually apply to the situation at hand." *Id.* at 425-26.

Here, like the plaintiff in *Williams*, Plaintiff conflates both defendants and, like the plaintiff in *Attanasio*, provides nothing more than a bare recitation of the factors for the joint employer and single integrated enterprise tests.

Plaintiff does not claim that Campbell's was her direct employer. And she fails to plead any facts upon which the Court could conclude that Campbell's and Campbell Soup Supply operated as either joint employers or as a single integrated enterprise. Instead, the Complaint consistently

refers to the two Defendants collectively as "Campbell" or "Defendants." *See* Bare Cert., Ex. A, at ¶¶ 9-45. For instance, Plaintiff alleges that both "Defendants have had the authority to hire and fire employees, supervise and control employees' work schedules and work conditions, determine the rate and method of pay, and/or maintain employee records." Bare Cert., Ex. A, at ¶ 15. She also alleges that both "Defendants have determined those matters governing the essential terms and conditions of employment for [herself] and similarly situated employees." Bare Cert., Ex. A, at ¶ 12. But she does not allege any basic facts to indicate that Campbell's played any role in her terms and conditions of employment (or those of any other Campbell Soup Supply employee). Indeed, much like the plaintiffs in *Williams*, she does not allege any facts about "*each* defendant's role in the employer-employee relationship." *Williams*, 2020 WL 4692504, at *6. She does not provide any facts about her individual interactions with Campbell's. For instance, she does not allege that Campbell's hired her, conducted her training, or took any other action that would indicate this authority over the terms and conditions of her employment.

Instead, the Complaint makes bare assertions that these two Defendants maintained "interrelated operations" and shared "common management and common ownership." Bare Cert., Ex. A, at ¶ 11. Similar to the plaintiffs' complaint in *Attanasio*, Plaintiff's Complaint simply lists the various factors relevant to the determination of whether an employer-employee relationship exists, without providing any details to support that these factors actually applied to her relationship with Campbell's. Because Plaintiff fails to adequately plead that Campbell's is her employer, the Court should dismiss her claims against Campbell's.

### C. This Court should dismiss the collective action allegations from Plaintiff's FLSA Complaint because she fails to sufficiently allege who comprises the group she seeks to represent.

A collective action complaint must provide the defendant with fair notice of the scope of the putative collective. *Dyer v. Lara's Trucks*, Civ. A. File No. 1:12-CV-1785, 2013 WL 609307,

at *3 (N.D. Ga. Feb. 19, 2013). This means that a plaintiff must provide sufficient facts about the putative collective action members, including job titles and descriptions, to allow the defendant to provide a response to the plaintiff's allegations concerning the putative collective and "raise a reasonable expectation that discovery will reveal evidence of" a group of similarly situated employees who have been victims of the same policy or plan. *Hodczak*, 2009 WL 911311, at *9 (quoting *Twombly*, 550 U.S. at 556); *Creech*, 2012 WL 4483384, at *3; *St. Croix v. Genentech, Inc.*, No. 8:12-cv-891, 2012 WL 2376668, at *3 (M.D. Fla. June 22, 2012).

Courts routinely dismiss collective action allegations that do not meet this pleading standard. *See, e.g.*, *Lafferty v. Sherwin-Williams Co.*, Civ. No. 1:17-06321, 2018 WL 3993448, at *6 (D.N.J. Aug. 21, 2018) (dismissing class action complaint); *Hodczak*, 2009 WL 911311, at *9-10 (dismissing collective action allegations); *St. Croix*, 2012 WL 2376668, at *3 (dismissing collective action allegations).

The court's decision in *Hodczak* emphasizes that a plaintiff must allege facts sufficient to identify the putative collective action members, including how they are similarly situated to the named plaintiff. *Hodczak*, 2009 WL 911311, at *9-10. There, the plaintiffs brought collective action claims under the Age Discrimination in Employment Act ("ADEA"), alleging that their terminations were "part of a systematic pattern and practice of terminating older employees," without providing any facts to describe such pattern or practice. *Hodczak*, 2009 WL 911311, at *9. Their complaint also alleged, "Each of the victims of [the defendant's] age discrimination . . . is similarly situated to the others, and Hodczak is similarly situated to all of them," without providing any facts to explain why these employees were similarly situated. *Id.* The court concluded that these allegations lacked any facts which would support a collective action, or which would suggest that other putative plaintiffs even existed. *Id.* The court acknowledged that discovery might assist

the plaintiffs in identifying potential collective action members but emphasized that this did not relieve the plaintiffs of their obligation to file a properly pled complaint in the first instance demonstrating that they were entitled to such discovery. *Id.*

The court's decision in *Creech* further explains that a plaintiff's complaint must provide some meaningful description of the putative collective action members. *Creech*, 2012 WL 4483384, at *3. In *Creech*, the plaintiff brought a collective action complaint alleging violations of the FLSA overtime requirements. The plaintiff asserted that she and her proposed collective action members were similarly situated because they "performed the same or similar job duties as one another in that they provided customer services for Defendants." *Creech*, 2012 WL 4483384, at *1. The court pointed out that although the plaintiff provided certain details about her own job duties in her complaint, she failed to provide any such description or detail about the employees who she alleged to be "similarly situated" to her. *Id.* at *3. The court found that "provid[ing] customer services" was not descriptive enough to give rise to a plausible right to relief. *Id.* Therefore, the court granted the defendants' motion to dismiss the collective action component of plaintiff's FLSA claim. *Id.*

Here, Plaintiff's collective action allegations lack the level of factual specificity required at the pleading stage. She purports to bring this collective action "on behalf of herself and all other similarly situated production/manufacturing employees." Bare Cert., Ex. A, at ¶ 33. But Plaintiff does not provide any description of these employees' job duties beyond the vague description of "production/manufacturing." As a result, there is no way for Defendants to determine the employees to whom the allegations in the complaint pertain.

Plaintiff only confuses the matter further by linking to the job postings available on Campbell's website, which are continuously updated as different positions become available or

unavailable. Because this page is not a static list of employees or job positions, the employees Plaintiff references are not readily identifiable from this page. *See generally* Bare Cert., Exs. C-I. While this website allows a viewer to filter the list of job postings based on categories of positions, there is no "production/manufacturing" category. *See* Bare Cert., Exs. E-F. The "Hourly Manufacturing" category does not reference "production," *see* Bare Cert., Ex. D, so it is not clear whether the putative collective is comprised solely of those roles tagged "Hourly Manufacturing" or whether the "production/manufacturing" group described in the Complaint is intended to encompass a broader (or narrower), unspecified group.

Moreover, the web page lists various roles that are not involved in any manufacturing process, like the Executive Administrative Assistant position in Camden, New Jersey, the Human Resources Generalist position in Denver, Pennsylvania, and the Customer Sales Lead positions in Philadelphia, Pennsylvania and Seattle, Washington, *see* Bare Cert., Exs. E-G, begging the question of whether Plaintiff may categorize these roles as production/manufacturing. This makes it impossible to identify the "production/manufacturing" employees Plaintiff references in her Complaint.

Is Plaintiff claiming that employees who held any role listed on this webpage was a "production/manufacturing" such that Plaintiff is seeking unpaid time on their behalf? Or is Plaintiff claiming that employees who held a role tagged on the website as "manufacturing" is a "production/manufacturing" employee on whose behalf Plaintiff is seeking unpaid time? Or does Plaintiff define "production/manufacturing" employee in a different manner? Is the web page at all relevant to how Plaintiff defines putative collective membership? The answers to these questions would impact significantly how Defendants would answer the allegations set forth in the

Complaint and what affirmative defenses they would assert. [4] Without facts sufficient to determine the group of employees to which Plaintiff's allegations pertain, it is impractical for Defendants to answer the Complaint.

Like the complaint in *Hodczak*, Plaintiff's Complaint pleads no facts to explain what group of employees she is seeking to represent. Because Plaintiff's Complaint fails to meet federal standards for pleading claims on behalf of a collective, the Court should dismiss the collective action allegations.

## IV.    CONCLUSION

Because Plaintiff's FLSA claims require interpretations of her CBA, her Complaint should be dismissed for lack of subject matter jurisdiction, or alternatively, for failure to state a claim. Because Plaintiff has failed to allege that The Campbell's Company was her employer under the FLSA, her Complaint should be dismissed as to The Campbell's Company. Furthermore, because she has failed to plead sufficient facts regarding the composition of the group of employees she seeks to represent, the collective action allegations should be dismissed as to both Defendants.

---

[4] By filing this motion to dismiss, Defendants do not waive any defenses applicable to putative plaintiffs. Depending on which facilities and employees are included in the "production/manufacturing" group identified by Plaintiff's Complaint, their claims may be subject to grievance procedures set forth in the relevant CBA and/or to individual arbitration. For instance, to the extent that Plaintiff's proposed collective includes hourly employees at the Paris, Texas; Dixon, California; and/or Stockton, California facilities of Campbell Soup Supply, Defendants intend to assert as to any such employees who opt into this litigation that their claims are subject to the grievance and arbitration procedures set forth in the CBAs governing the terms and conditions of workers at those facilities. In addition, to the extent that Plaintiff's proposed collective includes hourly employees at the Dixon or Stockton facilities of Campbell Soup Supply, Defendants intend to move to compel individual arbitration of the FLSA claims of putative plaintiffs who worked at these facilities and opt into the litigation on the grounds that they have agreed to individual arbitration of their FLSA claims regardless of whether the claims require interpretation of their CBA.

Dated: August 25, 2025                          **DUANE MORRIS LLP**

                                                */s/ Natalie F. Bare*
                                                Natalie F. Bare (NJ ID #034282009)
                                                Niyah Morgan-Dantzler (PA ID #333967) *
                                                30 South 17th Street
                                                Philadelphia, PA 19103-4196
                                                Telephone:  215-979-1962
                                                Fax: 215-405-3710
                                                Email:  nfbare@duanemorris.com
                                                        nmorgandantzler@duanemorris.com

                                                *Admitted pro hac vice*