IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **HEATHER JAMES**, on behalf of herself and others similarly situated, | : : : |
| Plaintiff, | : Civil Action No. 1:25-cv-08590 : |
| v. | : **Document Electronically Filed** : |
| **THE CAMPBELL'S COMPANY**; **CAMPBELL SOUP SUPPLY COMPANY, LLC**, | : **JURY TRIAL DEMANDED** : : : |
| Defendants. | : : |

**PLAINTIFF'S FIRST AMENDED COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

Named Plaintiff Heather James ("Named Plaintiff"), individually and on behalf of others similarly situated, files her First Amended Collective Action Complaint[1] against Defendants The Campbell's Company ("Campbell's Company") and Campbell Soup Supply Company, LLC ("Campbell's Soup") (Campbell's Company and Campbell's Soup are collectively referred to as "Defendants") for failure to pay employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Named Plaintiff's

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Named Plaintiff files this First Amended Collective Complaint as a matter of course as Defendants filed their Motion to Dismiss on August 25, 2025.

FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based on Named Plaintiff's personal knowledge and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the FLSA.

2. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and are subject to personal jurisdiction in this District.

## II. PARTIES

### A. Named Plaintiff

3. Named Plaintiff is an individual, a United States citizen, and a resident of Ohio.

4. Named Plaintiff worked for Defendants at their facility in Napoleon, Ohio as an hourly, non-exempt employee as defined in the FLSA primarily in the position of Filler Operator from approximately 2017 to May 2024.

5. At all relevant times, Named Plaintiff primarily performed non-exempt duties for Defendants.

6. Named Plaintiff's Consent to Join form was filed with the original

Complaint, pursuant to 29 U.S.C. § 216(b). ECF No. 1-1.

B. **Defendants**

7. Defendant Campbell's Company is a New Jersey corporation with its principal place of business in Camden, New Jersey. Campbell's Company's headquarters is located at 1 Campbell Place, Camden, New Jersey 08103-1701 ("Campbell's Company Corporate Headquarters").[2]

8. Defendant Campbell's Soup is a Delaware corporation with its principal place of business in the Campbell's Company Corporate Headquarters.

9. Campbell's Company operates numerous facilities across the United States.[3] Campbell's Company is a large food and drink manufacturer that produces various soups, snacks, meals, and other food and drink products.[4]

10. At all relevant times, Defendants have been an "employer" or "joint employer" as the FLSA defines those terms due to their employment of Named Plaintiff and those similarly situated as described herein.

11. Defendants form a "single employer" because they are part of a single integrated enterprise and/or a joint employer by jointly operating and providing services and maintaining interrelated operations, centralized control of labor

---

[2] *See Contact*, THE CAMPBELL'S CO., https://www.thecampbellscompany.com/contact/ (last visited September 15, 2025)
[3] *See id.*
[4] *Our Food*, THE CAMPBELL'S CO., https://www.thecampbellscompany.com/our-food/ (last visited September 15, 2025).

relations, common management and common ownership, and financial control.

12. In particular, Campbell's Company is a joint employer and/or a single integrated enterprise of several other Campbell's-related facilities and subsidiaries, which it in turn manages. Defendant Campbell's Company is a publicly-traded company and filed its annual 10-K form with the United States Securities and Exchange Commission, explicitly listing all of its current subsidiaries within the United States and globally.[5]

13. Although Named Plaintiff and similarly situated employees are paid by one of Campbell's Company's entities, such as Campbell's Soup, Campbell's Company is also an "employer" because it is the parent company that operates the single integrated enterprise or otherwise functions as a joint employer.

14. While Named Plaintiff and others similarly situated were paid by Campbell's Soup, the address listed for Campbell's Soup is the Campbell's Company Corporate Headquarters.[6] In addition, the phone number included on employees' paystubs is for the Campbell's Company Corporate Headquarters.[7]

15. In addition, the Campbell's Company listed job openings for Named

---

[5] *See Form 10-K*, THE CAMPBELL'S CO., Ex. 21, https://investor.thecampbellscompany.com/node/22071/html (last visited Sept. 15, 2025)

[6] *See* **Exhibit A**, Named Plaintiff's paystub.

[7] In addition to listing the Campbell's Company Corporate Headquarters' address for Campbell's Soup, the paystub includes the phone number 856-342-4800. This same phone number is included on the Campbell's Company's website for its headquarters. *See Contact*, THE CAMPBELL'S CO., https://www.thecampbellscompany.com/contact/ (last visited Sept. 15, 2025).

Plaintiff and other similarly situated employees at facilities where Campbell's Soup paid employees and other Campbell's Company subsidiaries paid other production and manufacturing employees.[8]

16. In the Campbell's Company's 10-K filed on September 19, 2024, it represents that it had "approximately 14,400 full-time and part-time employees."[9] In addition, the Campbell's Company lists its U.S. manufacturing facilities by reportable segment. The Campbell's Company reported that it maintained "Meals & Beverages" manufacturing locations in: (1) Dixon, California; (2) Stockton, California; (3) Bellvue, Colorado; (4) Maxton, North Carolina; (5) Napoleon, Ohio; (6) Tualatin, Oregon; (7) Austin, Texas; (8) Paris, Texas, and (9) Milwaukee, Wisconsin ("M&B Manufacturing Locations"). The Campbell's Company also lists its "Snacks" manufacturing locations in: (1) Goodyear, Arizona; (2) Bloomfield, Connecticut; (3) Lakeland, Florida; (4) Downers Grove, Illinois; (5) Jeffersonville, Indiana; (6) Hyannis, Massachusetts; (7) Charlotte, North Carolina; (8) Ashland, Ohio; (9) Willard, Ohio; (10) Salem, Oregon; (11) Denver Pennsylvania; (12) Downingtown, Pennsylvania; (13) Hanover, Pennsylvania; (14) Richmond, Utah;

---

[8] *See Careers*, THE CAMPBELL'S CO., https://careers.thecampbellscompany.com/us/en (last visited Sept. 15, 2025). Jobs for production and manufacturing employees are listed by clicking "Explore Operations Careers" which navigates the user to https://careers.thecampbellscompany.com/us/en/our-manufacturing-distribution-centers. Once there, the Campbell's Company allows the search to be refined by Category. Production and manufacturing jobs are listed in the Category "Hourly Manufacturing."

[9] *See Form 10-K*, THE CAMPBELL'S CO., pg. 6, https://investor.thecampbellscompany.com/node/22071/html (last visited Sept. 15, 2025).

(15) Beloit, Wisconsin; and (16) Franklin, Wisconsin ("Snacks Manufacturing Locations").[10]

17.  At all relevant times, Defendants have determined those matters governing the essential terms and conditions of employment for Named Plaintiff and similarly situated employees. In so doing, Defendants are responsible for the human resources decision-making processes, including material terms and conditions of employment and other human resource operations, for Named Plaintiff and those similarly situated.

18.  The work performed by Named Plaintiff and similarly situated employees benefited Defendants and directly or indirectly furthered their interests.

19.  At all relevant times, Defendants have or had direct or indirect control and authority over Named Plaintiff's and other similarly situated employees' working conditions, including matters governing the essential terms and conditions of their employment. At all relevant times, Defendants have exercised that authority and control over Named Plaintiff and other similarly situated employees.

20.  At all relevant times, Defendants have had the authority to hire and fire employees, supervise and control employees' work schedules and work conditions, determine the rate and method of pay, and/or maintain employee records.

---

[10] *See Form 10-K*, THE CAMPBELL'S CO., pg. 17, https://investor.thecampbellscompany.com/node/22071/html (last visited Sept. 15, 2025).

21. At all relevant times, Defendants have suffered or permitted Named Plaintiff and other similarly situated employees to work. The work that Named Plaintiff and other similarly situated employees performed was for Defendants' benefit.

22. During all relevant times, Defendants maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including promulgating and enforcing policies affecting wages and overtime.

23. Defendants operate and control an enterprise and employ employees engaged in commerce or the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

24. Defendants have had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

25. Upon information and belief, Defendants have applied or caused to be applied substantially the same employment policies, practices, and procedures to all employees, including policies, practices, and procedures relating to payment of and compliance with the FLSA, including overtime wages, timekeeping, maintenance of records, etc.

26. Based on information and belief, Defendants have been fully aware at all relevant times that they were legally required to comply with the wage and

overtime laws of the United States.

## III. FACTUAL ALLEGATIONS

27. Campbell's Company produces soups, snack foods, meals, beverages, and other food and drink products at M&B Manufacturing Locations and Snacks Manufacturing Locations.

28. At all times relevant, Named Plaintiff and other similarly situated production/manufacturing employees have been "employees" as defined in the FLSA.

29. At times relevant, Named Plaintiff and other similarly situated production/manufacturing employees have worked, or they were scheduled to work, 40 or more hours in one or more workweek(s).

30. Named Plaintiff and other similarly situated production and manufacturing employees were directly involved in producing and manufacturing the food and drink products that Defendants manufacture. For example, the Campbell's Company posted a "Utility 2 – Break Relief – DL1 1st Shift" job opening at one of its M&B Manufacturing Locations. *See* **Exhibit B**, Utility 2 – Break Relief – DL1 1st Shift job posting. The employee working in the Utility 2 – Break Relief – DL1 1st Shift is a production/manufacturing employee as that worker supplies components to the production line used in producing food products and must comply with GMPs, or "Good Manufacturing Practices." *Id.* In addition, the Campbell's Company posted a "Tech A Production" job opening at one of its M&B Manufacturing Locations. *See*

**Exhibit C**, Tech A Production job posting. Notably, the Tech A Production job posting states the employee will follow all "plant safety / Good Manufacturing Practice rules" and "will work on a production line in a food processing plant." *Id.* The preceding examples are for illustrative purposes to provide additional context for the types of similarly situated production/manufacturing employees whom Named Plaintiff is seeking to include in this action.

31. Named Plaintiff brings this action on behalf of similarly situated production and manufacturing employees at the Campbell's Company's M&B Manufacturing Locations.

32. During their employment, Named Plaintiff and other similarly situated production/manufacturing employees were not paid for all overtime wages they earned because employees were not paid for all work time for several reasons. First, Named Plaintiff and other similarly situated production/manufacturing employees regularly performed their first integral and indispensable work activity off-the-clock. However, employees were not paid for all the time that followed such activity. Second, on information and belief, Defendants maintained an unlawful policy or practice of rounding its production/manufacturing employees' hours worked down in Defendants' favor or otherwise reducing employees' total hours worked.

33. Named Plaintiff and other similarly situated production/manufacturing employees regularly arrive at their facility before the scheduled start of their shift to

don their uniform and personal protective equipment ("PPE") and engage in other pre-shift substantive work activities, such as washing their hands, reviewing their assignment, and checking daily shift information. Donning their uniform and PPE is Named Plaintiff's and other similarly situated production/manufacturing employees' first integral and indispensable job duty of the day, as they are working with food products in an industrial setting that requires adherence to Food and Drug Administration ("FDA") regulations and Good Manufacturing Practices ("GMPs"). Donning sanitary uniforms and PPE to maintain sanitary/hygienic conditions and comply with FDA regulations are inextricably intertwined with the job duties of manufacturing and packaging Defendants' food and beverage products.

34. Additionally, after donning PPE, Named Plaintiff and other similarly situated production/manufacturing employees must walk a distance on Defendants' premises to clock in and report for the start of their shifts.

35. Named Plaintiff and other similarly situated production/manufacturing employees are not compensated for all work after donning their PPE. Instead, the time that follows donning PPE is either not captured because it occurs before clocking in, and/or, on information and belief, Defendants systematically round employees' hours worked to their detriment.

36. Defendants' failure to compensate Named Plaintiff and other similarly situated production/manufacturing employees, as set forth above, has resulted in

unpaid overtime.

37. Defendants' policies and practices, as alleged herein, have denied Named Plaintiff and those similarly situated production/manufacturing employees overtime compensation.

38. Defendants had actual or constructive knowledge that they were not compensating Named Plaintiff and other similarly situated production/manufacturing employees for all hours worked.

39. Defendants acted willfully regarding their conduct described herein.

40. The FLSA requires Defendants to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

41. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

42. Defendants failed to track, keep, or transmit the hours accurately worked each day by Named Plaintiff and other similarly situated

production/manufacturing employees.

43. Defendants willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed, which had the direct effect of reducing Defendants' labor costs to the detriment of Named Plaintiff and other similarly situated production/manufacturing employees.

44. Thus, Defendants willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

## IV. FLSA COLLECTIVE ACTION ALLEGATIONS

45. Named Plaintiff brings her FLSA claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of herself and all other similarly situated production/manufacturing employees of the opt-in collective, consisting of the following:

> **All current and former hourly production/manufacturing employees at Campbell's Company's M&B Manufacturing Locations who were paid for forty (40) or more hours of work in any workweek beginning June 9, 2022 and continuing through the final disposition of this case (hereinafter the "FLSA Collective" or the "Potential FLSA Collective Members").**

46. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Named Plaintiff, numerous current and former hourly production/manufacturing employees are similarly situated

regarding their claims for unpaid wages and damages. Named Plaintiff is representative of the FLSA Collective and acting on behalf of their interests as well as her own in bringing this action.

47. These similarly situated production/manufacturing employees are known to Defendants and are readily identifiable. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) to collectively adjudicate their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

48. Named Plaintiff and the Potential FLSA Collective Members did not clearly and unmistakably waive their right to bring their FLSA claims in court. The adjudication of Named Plaintiff's and Potential FLSA Collective Members' FLSA claims does not depend on any interpretation of a collective bargaining agreement.

V. **CAUSE OF ACTION**

**COUNT I:**
**FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME**

49. All of the preceding paragraphs are realleged as if fully rewritten herein.

50. This claim is brought as part of a collective action by Named Plaintiff on behalf of herself and the FLSA Collective.

51. The FLSA requires that employees receive overtime compensation for hours worked in excess of 40 per workweek. 29 U.S.C. § 207(a)(1).

52. During relevant times, Defendants employed Named Plaintiff and the Potential FLSA Collective Members.

53. Named Plaintiff and the Potential FLSA Collective Members regularly worked in excess of 40 hours in various workweeks.

54. Defendants violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to compensate them overtime wages for all overtime hours worked because of Defendants' policies and/or practices described above.

55. Named Plaintiff and the Potential FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

56. Defendants knew or should have known of the FLSA's overtime payment requirements. Despite such knowledge, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the Potential FLSA Collective Members are entitled.

57. The exact total compensation, including overtime, that Defendants have failed to pay Named Plaintiff and the Potential FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in Defendants' possession or were otherwise not kept.

58. As a direct and proximate result of Defendants' conduct, Named Plaintiff and the Potential FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation,

liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of herself and the Potential FLSA Collective Members.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendants and for an Order:

A.    Directing prompt issuance of notice to the FLSA Collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

B.    Finding that Defendants failed to keep accurate records in accordance with the FLSA and that, as a result, Named Plaintiff and the FLSA Collective are entitled to prove their hours worked with reasonable estimates;

C.    Awarding to Named Plaintiff and the Potential FLSA Collective Members unpaid overtime wages to be determined at trial together with any liquidated damages allowed by the FLSA;

D.    Awarding to Named Plaintiff and the Potential FLSA Collective Members costs, disbursements, and reasonable allowances for fees as well as reimbursement of costs and expenses;

E.    Awarding to Named Plaintiff and the Potential FLSA Collective Members such other and further relief as the Court deems just and proper;

F.	Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

G.	Rendering a judgment against Defendants for all damages, relief, or any other recovery whatsoever.

## JURY DEMAND

Named Plaintiff requests a trial by a jury of eight (8) persons.

Date: September 15, 2025				Respectfully submitted,

/s/ Krysten Connon
Krysten Connon, NJ Bar No. 016732012
Sarah R. Schalman-Bergen, *pro hac vice forthcoming*
**LICHTEN & LISS-RIORDAN, P.C.**
30 Washington Ave, Suite D-3
Haddonfield, NJ 08033
Telephone: (617) 994-5800
kconnon@llrlaw.com
ssb@llrlaw.com

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (OH Bar 0085586)*
Adam C. Gedling (OH Bar 0085256)*
Tristan T. Akers (OH Bar 0102298)*
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964

Email: mcoffman@mcoffmanlegal.com
agedling@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*

*\* Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, the foregoing was electronically filed with the Clerk of the District Court using the CM/ECF system, which sends notification of all filings upon all counsel of record.

/s/ Krysten Connon
Krysten Connon, NJSB # 016732012